**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Guaranty Bank, Plaintiff–Appellant**

v.

**RBS SECURITIES INCORPORATED, Defendant–Appellee.**

**Federal Deposit Insurance Corporation, as Receiver for Guaranty Bank, Plaintiff–Appellant**

v.

**Deutsche Bank Securities, Incorporated; Goldman Sachs & Company, Defendants–Appellees.**

**Nos. 14–51055, 14–51066.**

United States Court of Appeals, Fifth Circuit.

Aug. 10, 2015.

Jaclyn Chait Taner, James Scott Watson, Esq., Counsel (argued), Federal Deposit Insurance Corporation, Arlington, VA, Guy Michael Hohmann Esq., Ryan

Trent Shelton, Austin, TX, for Plaintiff–Appellant.

Noelle M. Reed, Houston, TX, Andrew Tyler Frankel, Esq. (argued), Thomas C. Rice, Simpson, Thacher & Bartlett, L.L.P., New York, N.Y., Lisa A. Paulson, Shannon H. Ratliff, Ratliff Law Firm, Austin, TX, for Defendants–Appellees.

David Charles Frederick, Esq. (argued), William M. Jay, Washington DC, Kathleen Marie Sullivan, Michael John Dell, New York, N.Y., Joshua M. Daniels, Boston, MA, for Amicus Curiae.

Before KING, SMITH, and ELROD, Circuit Judges.

KING, Circuit Judge:

The Federal Deposit Insurance Corporation sued the Defendants–Appellees for securities fraud, alleging that they made false and misleading statements in selling and underwriting residential mortgage backed securities. While the FDIC filed its lawsuit within three years of its appointment as receiver, and therefore within the federal limitations period in the FDIC Extender Statute, 12 U.S.C. § 1821(d)(14), it filed suit more than five years after the securities at issue were sold, running afoul of the limitations period in the Texas Securities Act. Though the FDIC argued that the FDIC Extender Statute preempts the state law limitations period, the district court granted judgment on the pleadings in favor of the Appellees, holding that the FDIC Extender Statute preempts only state statutes of limitations, not state statutes of repose. That decision was error. For the reasons set out below, we conclude that the FDIC Extender Statute preempts all limitations periods, whether characterized as statutes of limi-

tations or as statutes of repose. We therefore REVERSE the judgment of the district court, and REMAND this case for further proceedings.

### I.

Prior to the 2008 global financial crisis, Guaranty Bank had invested approximately $2,100,000,000 in residential mortgage backed securities. Residential mortgage backed securities are packages of residential mortgages that are sold by the original lender to a trust. Along with the mortgages themselves, the trust receives the right to the monthly payments on those mortgages from the homeowners. Investors can then purchase a form of security, called a certificate, from the trust. The certificate gives the investor the right to a share of the monthly payments on the underlying mortgages; the investment also provides capital for the trust to purchase mortgages.

Guaranty purchased many of its residential mortgage backed securities from the Appellees. In 2004 and 2005, Guaranty invested approximately $250,000,000 in two AAA-rated residential mortgage backed securities underwritten and sold by Appellee RBS Securities, Inc.; $100,000,000 in a AAA-rated residential mortgage backed security underwritten and sold by Appellee Goldman, Sachs & Co.; and another $490,000,000 in three AAA-rated residential mortgage backed securities underwritten and sold by Appellee Deutsche Bank Securities, Inc.[1] On August 21, 2009, the Office of Thrift Supervision closed Guaranty Bank and the FDIC was appointed receiver.

The FDIC filed two separate suits against the Appellees and other financial institutions on August 17, 2012.[2] The FDIC's lawsuit alleged claims under the Securities Act of 1933 and the Texas Securities Act.[3] The FDIC alleged that, in underwriting and selling the residential mortgage backed securities to Guaranty, the Appellees "made numerous statements of material fact about the [securities] and, in particular, about the credit quality of the mortgage loans that backed them" that "were untrue." The FDIC also alleged that the Appellees "omitted to state many material facts that were necessary in order to make their statements not misleading." As an example, the FDIC alleged that:

> [T]he defendants made untrue statements or omitted important information about such material facts as the loan-to-value ratios of the mortgage loans, the extent to which appraisals of the properties that secured the loans were performed in compliance with professional appraisal standards, the number of borrowers who did not live in the houses that secured their loans (that is, the number of properties that were not primary residences), and the extent to which the entities that made the loans disregarded their own standards in doing so.

The FDIC's lawsuits were filed within three years of its appointment as receiver, but more than five years after the securities were sold. The timing of the FDIC's lawsuit implicates two statutes of limitations. First, a federal statute, referred to as the FDIC Extender Statute, provides a limitations period of three years after the

---

1. RBS Securities, Inc., Goldman, Sachs & Co., and Deutsche Bank Securities, Inc. are herein collectively called the "Appellees."

2. All of the other defendant financial institutions entered into settlement agreements with the FDIC or have otherwise been severed or dismissed from this case.

3. All of the federal claims were settled or severed from this action.

FDIC's appointment as receiver. 12 U.S.C. § 1821(d)(14). But the Texas Securities Act imposes a "statute of limitations," characterized as a statute of repose, of five years from the date the securities at issue were sold. Tex. Rev. Civ. Stat. Ann. art. 581–33(H)(2)(b). Therefore, the FDIC's suit was filed within the federal period but outside the state period.[4]

The Appellees, in their separate cases, moved for judgment on the pleadings, arguing that the Texas statute of repose barred the FDIC's claims. The Appellees' argument centered on the Supreme Court's opinion in CTS Corp. v. Waldburger, —— U.S. ——, 134 S.Ct. 2175, 189 L.Ed.2d 62 (2014), which construed a provision of CERCLA, 42 U.S.C. § 9658, as preempting only state statutes of limitations, not state statutes of repose.

Relying on the decision in CTS, the district court granted the Appellees' motions for judgment on the pleadings and dismissed the FDIC's claims as barred by Texas's statute of repose.[5] We review the district court's judgment de novo. Gil Ramirez Grp., L.L.C. v. Houston Indep. Sch. Dist., 786 F.3d 400, 408 (5th Cir.2015).

II.

The Federal Deposit Insurance Corporation guarantees depositors the money in their bank accounts up to $250,000. 12 U.S.C. § 1821(a)(1)(A), (E). Alongside, and in furtherance of, its role providing deposit insurance, the FDIC also acts as the receiver for failed banks. 12 U.S.C. § 1821(c), (d); see also Stanley V. Ragalevsky & Sarah J. Ricardi, Anatomy of a Bank Failure, 126 Banking L.J. 867, 868–69 (2009). Unlike the failure of non-bank firms, bank failures are resolved through an administrative process under the terms of the Federal Deposit Insurance Act, not through the judicial process in the Bankruptcy Code. See 11 U.S.C. § 109(b)(2); 12 U.S.C. § 1821(c); Robert R. Bliss & George G. Kaufman, U.S. Corporate & Bank Insolvency Regimes: A Comparison & Evaluation, 2 Va. L. & Bus. Rev. 143, 144–45 (2007). When a bank fails, the FDIC evaluates the bank's financial condition and attempts to resolve the bank's failure by arranging an acquisition of all or part of the failed bank's assets and liabilities, especially its deposits, by a healthy bank. See Ragalevsky & Ricardi, supra, at 872–80. If an acquisition of the failed bank cannot be arranged, or its deposits transferred, the FDIC takes over and closes the failed bank, and pays depositors the amount of money in their accounts up to the insured amount. See id. at 875, 880–81. The deposit insurance money is paid from the deposit insurance fund, which is managed by the FDIC and funded primarily through fees paid by insured banks. 12 U.S.C. § 1821(a)(4); Milton R. Schroeder, The Law & Regulation of Financial Institutions ¶ 11.05 (2013). After paying the depositors up to the insured

---

4. It is undisputed that the state limitations period had not run at the time the FDIC was appointed as receiver. See Fed. Deposit Ins. Corp. v. Barton, 96 F.3d 128, 132 (5th Cir. 1996) ("Th[e FDIC Extender S]tatute, however, does not allow the [FDIC] to bring a state law claim that had expired before the [FDIC] was appointed receiver.").

5. We do not consider the argument of amicus curiae the Securities Industry & Financial Markets Association that the FDIC Extender

Statute's reference to "contract" and "tort" claims excludes "statutory claims." "It is well-settled in this circuit that 'an amicus curiae generally cannot expand the scope of an appeal to implicate issues that have not been presented by the parties to the appeal.'" World Wide St. Preachers Fellowship v. Town of Columbia, 591 F.3d 747, 752 n. 3 (5th Cir.2009) (quoting Resident Council of Allen Parkway Vill. v. U.S. Dep't of Hous. & Urban Dev., 980 F.2d 1043, 1049 (5th Cir.1993)).

amount, the FDIC is then subrogated to the depositors' claims in order to reimburse the deposit insurance fund. Ragalevsky & Ricardi, *supra*, at 881; *see also* Bliss & Kaufman, *supra*, at 161. As receiver, the FDIC then evaluates and determines creditors' claims through an administrative process, Ragalevsky & Ricardi, *supra*, at 887; Bliss & Kaufman, *supra*, at 160, and seeks to recover the maximum amount of money possible for the bank's creditors, including depositors with uninsured deposits and the FDIC-as-subrogee, by disposing of the failed bank's assets and pursuing its outstanding legal claims, Ragalevsky & Ricardi, *supra*, at 885; *see* Bliss & Kaufman, *supra*, at 160–62. The FDIC is usually one of the failed bank's most significant creditors, due to its payout of deposit insurance and its consequent subrogation. *See 2015–2019 Strategic Plan: Receiver Management Program*, fdic.gov (last visited June 17, 2015), https://www.fdic.gov/about/strategic/strategic/receivership.html; Ragalevsky & Ricardi, *supra*, at 888–89; Bliss & Kaufman, *supra*, at 161. Federal law mandates that the claims of uninsured domestic depositors, which include the FDIC-as-subrogee, be given preference over the claims of the failed bank's other unsecured creditors. 12 U.S.C. § 1821(d)(11); Bliss & Kaufman, *supra*, at 161–62. As the FDIC disposes of the failed bank's assets and collects on its outstanding claims, it makes periodic, pro-rata payments to the failed bank's creditors. Ragalevsky & Ricardi, *supra*, at 891; Bliss & Kaufman, *supra*, at 167. "Once [the] FDIC has paid all eligible claims and disposed of all receivership assets, it proceeds to terminate the receivership." Ragalevsky & Ricardi, *supra*, at 892.[6]

The Savings and Loan crisis of the 1980s profoundly tested the federal deposit insurance system. "During the period from 1980 to 1988, over 500 savings associations failed—more than three-and-a-half times as many as in the previous forty-five years combined." Paul T. Clark et al., *Regulation of Savings Associations Under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989*, 45 Bus. Law. 1013, 1013 (1990). "In meeting its obligations to depositors of failed savings and loan associations, the Federal Savings and Loan Insurance Corporation ..., which insured the deposits held by savings associations, became insolvent." *Id.* at 1013–14 (footnote omitted). By the end of 1988, the Federal Savings and Loan Insurance Corporation "had a negative net worth of approximately $50 billion." *Id.* at 1014 n.5. Because of the depletion of the insurance fund, the government "lacked the funds to close hundreds of insolvent and marginally capitalized savings associations," and, "[a]s a result," those savings associations continued to operate and incur losses, "thereby increasing the obligations of the already insolvent FSLIC." *Id.* at 1014.

In response to the crisis, Congress passed the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), "[a]n Act to reform, recapitalize, and consolidate the Federal deposit insurance system, to enhance the regulatory and enforcement powers of Federal financial institutions regulatory agencies, and for other purposes." Pub.L. No. 101–73, preamble, 103 Stat. 183, 183 (1989). Along with numerous reforms to the federal deposit insurance system, FIRREA included a provision prescribing a statute of limitations for actions brought by the

---

6. This is, by necessity, a simplified account of a complex process. For a more complete account, see generally Ragalevsky & Ricardi, *supra*.

FDIC as the conservator or receiver for a failed bank:

## (d) Powers and duties of Corporation as conservator or receiver

. . .

(14) Statute of limitations for actions brought by conservator or receiver

(A) In general

Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the Corporation as conservator or receiver shall be—

(i) in the case of any contract claim, the longer of—

(I) the 6–year period beginning on the date the claim accrues; or

(II) the period applicable under State law; and

(ii) in the case of any tort claim . . ., the longer of—

(I) the 3–year period beginning on the date the claim accrues; or

(II) the period applicable under State law.

(B) Determination of the date on which a claim accrues

For purposes of subparagraph (A), the date on which the statute of limitations begins to run on any claim described in such subparagraph shall be the later of—

(i) the date of the appointment of the Corporation as conservator or receiver; or

(ii) the date on which the cause of action accrues.

12 U.S.C. § 1821(d)(14).[7] The FDIC Extender Statute works by hooking any claims that are live at the time of the FDIC's appointment as receiver and pulling them forward to a new, federal, minimum limitations period—six years for contract claims, three years for tort claims. *See Barton,* 96 F.3d at 132 ("Th[e FDIC Extender S]tatute, however, does not allow the [FDIC] to bring a state law claim that had expired before the [FDIC] was appointed receiver."). Discussing this provision, Senator Riegle, one of FIRREA's sponsors, stated:

Although these provisions have attracted little attention from the media, they are of the utmost importance. Extending these limitations periods will significantly increase the amount of money that can be recovered by the Federal Government through litigation, and help ensure the accountability of the persons responsible for the massive losses the Government has suffered through the failures of insured institutions. The provisions should be construed to maximize potential recoveries by the Federal Government by preserving to the greatest extent permissible by law claims that would otherwise have been lost due to the expiration of hitherto applicable limitations periods. See *Electrical Workers v. Robbins & Myers, Inc.,* 429 U.S. 229, 243 [97 S.Ct. 441, 50 L.Ed.2d 427] (1976); *Chase Securities Corp. v. Donaldson,* 325 U.S. 304, 311–16 [65 S.Ct. 1137, 89 L.Ed. 1628] (194[5]).

135 Cong. Rec. 18866 (Aug. 4, 1989). The extender statute serves a functional purpose as well, "to give the [FDIC] three years from the date upon which it is ap-

---

7. This statute is referred to, throughout this opinion, as the FDIC Extender Statute or the extender statute. Two other extender statutes, for the Federal Housing Finance Agency and the National Credit Union Administration, are referred to in a similar manner where discussed.

pointed receiver to decide whether to bring any causes of action held by a failed savings and loan." *Barton*, 96 F.3d at 133. "This three-year period allows the [FDIC] to investigate and determine what causes of action it should bring on behalf of a failed institution." *Id.*

The parties do not dispute that the FDIC Extender Statute preempts state statutes of limitations. However, the Appellees contend that the extender statute does not preempt state statutes of repose. Every circuit that has heard this argument has disagreed and held that it does. *See Nat'l Credit Union Admin. Bd. v. Nomura Home Equity Loan, Inc. (Nomura II),* 764 F.3d 1199 (10th Cir.2014);[8] *Fed. Hous. Fin. Agency v. UBS Ams. Inc.,* 712 F.3d 136, 142–44 (2d Cir.2013);[9] *cf. Beckley Capital Ltd. P'ship v. DiGeronimo,* 184 F.3d 52, 57 (1st Cir.1999). Indeed, our own circuit has previously rejected the Appellees' argument, albeit in dicta in an unpublished opinion. *See Stone-hedge/Fasa–Texas–JDC v. Miller,* 110 F.3d 793, at *2–3 (5th Cir.1997) (unpublished). Additionally, the Nevada Supreme Court has reached the same conclusion. *Fed. Deposit Ins. Corp. v. Rhodes,* 336 P.3d 961, 965 (Nev.2014).

### III.

Yet any analysis of the FDIC Extender Statute must take into account the Supreme Court's opinion in *CTS Corp. v. Waldburger.* In *CTS,* the Supreme Court construed a statutory provision in CERCLA, 42 U.S.C. § 9658, which also purports to preempt state statutes of limitations. That provision reads:

### § 9658. Actions under State law for damages from exposure to hazardous substances

**(a) State statutes of limitations for hazardous substance cases**

**(1) Exception to State statutes**

In the case of any action brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility, if the applicable limitations period for such action (as specified in the State statute of limitations or under common law) provides a commencement date which is earlier than the federally required commencement date, such period shall commence at the federally required commencement date in lieu of the date specified in such State statute.

**(2) State law generally applicable**

Except as provided in paragraph (1), the statute of limitations established under State law shall apply in all actions brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility.

. . .

**(b) Definitions**

As used in this section—

. . .

**(2) Applicable limitations period**

The term "applicable limitations period" means the period specified in a

---

**8.** The *Nomura II* court was construing an extender statute for the National Credit Union Administration, 12 U.S.C. § 1787(b)(14), which is for all intents and purposes identical to the FDIC Extender Statute.

**9.** Similarly, the Federal Housing Finance Agency Extender Statute, 12 U.S.C. § 4617(b)(12), construed by the *UBS* court is, for all intents and purposes, identical to the FDIC Extender Statute.

statute of limitations during which a civil action referred to in subsection (a)(1) of this section may be brought.

**(3) Commencement date**

The term "commencement date" means the date specified in a statute of limitations as the beginning of the applicable limitations period.

**(4) Federally required commencement date**

**(A) In general**

Except as provided in subparagraph (B), the term "federally required commencement date" means the date the plaintiff knew (or reasonably should have known) that the personal injury or property damages referred to in subsection (a)(1) of this section were caused or contributed to by the hazardous substance or pollutant or contaminant concerned.

**(B) Special rules**

In the case of a minor or incompetent plaintiff, the term "federally required commencement date" means the later of the date referred to in subparagraph (A) or the following:

(i) In the case of a minor, the date on which the minor reaches the age of majority, as determined by State law, or has a legal representative appointed.

(ii) In the case of an incompetent individual, the date on which such individual becomes competent or has had a legal representative appointed.

42 U.S.C. § 9658.

The Supreme Court held, in *CTS*, that § 9658 in CERCLA preempted only state statutes of limitations, not state statutes of repose. 134 S.Ct. at 2180. The Court began by discussing the differences be-tween those two types of statutes. *Id.* at 2182–84. "[A] statute of limitations creates 'a time limit for suing in a civil case, based on the date when the claim accrued,'" and "a claim accrues in a personal-injury or property-damage action 'when the injury occurred or was discovered.'" *Id.* at 2182 (quoting *Black's Law Dictionary* 1546 (9th ed.2009)). In contrast, a statute of repose "puts an outer limit on the right to bring a civil action," and its time limit begins to run "not from the date on which the claim accrues but instead from the date of the last culpable act or omission of the defendant." *Id.* Because of that distinction, a statute of repose may run before a plaintiff has even suffered an injury. *Id.* Explaining the policies underlying the two types of statutes, the Court stated that "[s]tatutes of limitations require plaintiffs to pursue 'diligent prosecution of known claims,'" *id.* at 2183 (quoting *Black's Law Dictionary* 1546 (9th ed.2009)), and "promote justice by preventing surprises through [plaintiffs'] revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared," *id.* (alteration in original) (quoting *R.R. Telegraphers v. Ry. Express Agency, Inc.*, 321 U.S. 342, 348–49, 64 S.Ct. 582, 88 L.Ed. 788 (1944)). While statutes of repose serve those same purposes, "the rationale has a different emphasis" in that "[s]tatutes of repose effect a legislative judgment that a defendant should 'be free from liability after the legislatively determined period of time.'" *Id.* (quoting 54 C.J.S. *Limitations of Actions* § 7). The Court also noted that a "central distinction" between statutes of limitations and statutes of repose is that statutes of limitations are subject to equitable tolling, consistent with their purpose of encouraging diligence in plaintiffs, while statutes of repose, instead intended to render defendants "free from liability after the legisla-

tively determined period of time," are not. *Id.* (quoting 54 C.J.S. *Limitations of Actions* § 7).

Turning to § 9658 itself, the Court observed that the statute "characterizes preemption as an '[e]xception' to the regular rule" contained in another subsection of § 9658, that state statutes of limitations are generally applicable, i.e., "the statute of limitations established under State law shall apply." *Id.* at 2185 (alteration in original) (quoting 42 U.S.C. § 9658(a)(2)). "Under this structure," the Court reasoned, "state law is not pre-empted unless it fits into the precise terms of the exception." *Id.*

The Court then analyzed Congress's repeated use of the term "statute of limitations" and noted that it did not use the term "statute of repose." *Id.* According to the Court, such usage is "instructive, but . . . not dispositive." *Id.* The Court observed that "[w]hile the term 'statute of limitations' has acquired a precise meaning, distinct from 'statute of repose,' and while that is its primary meaning, it must be acknowledged that the term 'statute of limitations' is sometimes used in a less formal way," and, in that less formal sense, "it can refer to any provision restricting the time in which a plaintiff must bring suit." *Id.* The Court noted that Congress itself "has used the term 'statute of limitations' when enacting statutes of repose" and that the petitioner had not "point[ed] out an example in which Congress has used the term 'statute of repose.' " *Id.* The Court observed that, in discussing statutes of limitations, the Second Restatement of Torts, published in 1977, "noted that '[i]n recent years special "statutes of repose" have been adopted in some states,' " but that the Fifth Edition of *Black's Law Dictionary,* published in 1979, equated the two terms in its definition of statute of limitations. *Id.* at 2185–86

(quoting Restatement (Second) of Torts § 899 cmt.g).

Concluding that "it is apparent that general usage of the legal terms has not always been precise," the Court nevertheless observed that "the concept that statutes of repose and statutes of limitations are distinct was well enough established to be reflected in the 1982 Study Group Report, commissioned by Congress." *Id.* at 2186. That Study Group Report was commissioned after Congress passed CERCLA, and Congress directed the study group to "determine 'the adequacy of existing common law and statutory remedies in providing legal redress for harm to man and the environment caused by the release of hazardous substances into the environment,' including 'barriers to recovery posed by existing statutes of limitations.' " *Id.* at 2180 (quoting 42 U.S.C. § 9651(e)(1), (3)(F)). The resulting report recommended, *inter alia,* that "all states that have not already done so, clearly adopt" the discovery rule for accrual of causes of action due to the "long latency periods in harm caused by toxic substances." *Id.* at 2180–81. "The Report further stated: 'The Recommendation is intended also to cover the repeal of the statutes of repose which, in a number of states[,] have the same effect as some statutes of limitation in barring [a] plaintiff's claim before he knows that he has one.' " *Id.* at 2181 (alterations in original). Section 9658 was enacted in response to the Study Group Report's recommendations. *Id.* Therefore, in construing § 9658, the Court recognized that "[t]he Report acknowledged that statutes of repose were not equivalent to statutes of limitations and that a recommendation to pre-empt the latter did not necessarily include the former." *Id.* at 2186. Further discussing the report, the Court stated:

The Report clearly urged the repeal of statutes of repose as well as statutes of limitations. But in so doing the Report did what the statute does not: It referred to statutes of repose as a distinct category. And when Congress did not make the same distinction, it is proper to conclude that Congress did not exercise the full scope of its pre-emption power.

*Id.*

Stating that "the use of the term 'statute of limitations' in § 9658 is not dispositive," the Court moved to other modes of textual analysis. *Id.* First, the Court stated that "[t]he text of § 9658 includes language describing the covered period in the singular." *Id.* Pointing to the use of the terms "applicable limitations period," "such period shall commence," and "the statute of limitations established under State law," the Court reasoned that "[t]his would be an awkward way to mandate the pre-emption of two different time periods with two different purposes." *Id.* at 2186–87.

Second, the Court zeroed in on the definition of the "applicable limitations period" in § 9658. *Id.* at 2187. The Court noted that "the statute describes it as 'the period' during which a 'civil action' under state law 'may be brought.'" *Id.* (quoting 42 U.S.C. § 9658(b)(2)). Recognizing that while "in a literal sense a statute of repose limits the time during which a suit 'may be brought' because it provides a point after which a suit cannot be brought," the Court nevertheless reasoned that "the definition of the 'applicable limitations period' presupposes that 'a [covered] civil action' exists." *Id.* (quoting 42 U.S.C. § 9658(b)(2)). Since "[a] statute of repose . . . 'is not related to the accrual of any cause of action,'" but rather "mandates that there shall be no cause of action beyond a certain point, even if no cause of action has yet accrued," "a statute of repose can pro-

hibit a cause of action from coming into existence." *Id.* (quoting 54 C.J.S. *Limitations of Actions* § 7). Concluding, the Court stated that "§ 9658(b)(2) is best read to encompass only statutes of limitations, which generally begin to run after a cause of action accrues and so always limit the time in which a civil action 'may be brought.'" *Id.* (quoting 42 U.S.C. § 9658(b)(2)).

Third, the Court found "[a]nother and altogether unambiguous textual indication that § 9658 does not pre-empt statutes of repose" in the statute's provision "for equitable tolling for 'minor or incompetent plaintiff[s].'" *Id.* (alteration in original) (quoting 42 U.S.C. § 9658(b)(4)(B)). The Court observed that a "'critical distinction' between statutes of limitations and statutes of repose 'is that a repose period is fixed and its expiration will not be delayed by estoppel or tolling.'" *Id.* (quoting 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1056 (3d ed.2002)). Accordingly, § 9658's tolling provisions suggest "that the statute's reach is limited to statutes of limitations, which traditionally have been subject to tolling." *Id.* at 2188. The Court concluded that "[i]t would be odd for Congress, if it did seek to pre-empt statutes of repose, to pre-empt not just the commencement date of statutes of repose but also state law prohibiting tolling of statutes of repose—all without an express indication that § 9658 was intended to reach the latter." *Id.*

The Court then confronted the argument that preemption should be found as statutes of repose obstruct the accomplishment of the statute's purpose, "namely, to help plaintiffs bring tort actions for harm caused by toxic contaminants." *Id.* Rejecting that argument, the Court wrote that "the level of generality at which the statute's purpose is framed affects the

judgment whether a specific reading will further or hinder that purpose." *Id.* The Court stated that "CERCLA ... does not provide a complete remedial framework," or "a general cause of action for all harm caused by toxic contaminants," but rather "leaves untouched States' judgments about causes of action, the scope of liability, the duration of the period provided by statutes of limitations, burdens of proof, rules of evidence, and other important rules governing civil actions." *Id.* Accordingly, the Court concluded that "Respondents have not shown that in light of Congress' decision to leave those many areas of state law untouched, statutes of repose pose an unacceptable obstacle to the attainment of CERCLA's purposes." *Id.*

The Appellees contend that the Supreme Court's analysis in *CTS* compels the conclusion that the FDIC Extender Statute, like § 9658, preempts only state statutes of limitations. We cannot agree.

## IV.

██ The FDIC Extender Statute preempts statutes of repose as well as statutes of limitations. It therefore preempts the five-year repose period in the Texas Securities Act, and the district court erred in granting judgment on the pleadings in favor of the Appellees. The text, structure, and purpose of the FDIC Extender Statute all evince a Congressional intent to grant the FDIC a three-year grace period after its appointment as receiver to investigate potential claims. Therefore, the statute displaces any limitations period that would interfere with that reprieve—whether characterized as a statute of limitations or as a statute of repose.

The Supreme Court's decision in *CTS* does not compel—or even suggest—the opposite conclusion. The Appellees' reliance on the superficial similarities between § 9658 and the extender statute is unavail-

ing, and, in fact, many of the considerations that the Court found disfavored preemption in *CTS* suggest preemption when applied to the FDIC Extender Statute.

The text of the FDIC Extender Statute indicates that it prescribes a new, mandatory statute of limitations for actions brought by the FDIC as receiver. The extender statute is entitled "Statute of limitations for actions brought by conservator or receiver," and the statute states "the applicable statute of limitations ... shall be" at least three years for tort claims. 12 U.S.C. § 1821(d)(14); *id.* § 1821(d)(14)(A). Such mandatory language "preclude[s] the possibility that some other limitations period might apply" to shorten the three-year minimum period the statute sets out. *Nomura II,* 764 F.3d at 1226 (quoting *UBS,* 712 F.3d at 142); *Rhodes,* 336 P.3d at 965 ("In using the term 'shall' to mandate that the 'applicable statute of limitations ... shall be ... the longer of' six years after the FDIC's claim accrues or 'the period applicable under State law,' Congress barred the possibility that some other time limitation would apply to the FDIC's claim." (alterations in original) (quoting 12 U.S.C. § 1821(d)(14)(A))). Interpreting the statute as excluding repose periods from its ambit would circumvent that mandatory language by providing the FDIC with less than three years from the date of its appointment as receiver to bring claims.

Moreover, the term "statute of limitations" in the extender statute does not refer to the limitations periods being displaced, but rather the new, mandatory federal period being created. *See Nomura II,* 764 F.3d at 1229 ("But this argument confuses what the Extender Statute *does*—sets an all-purpose time frame for NCUA to bring enforcement actions on behalf of failed credit unions—with what it *replaces*—the preexisting time frames to

bring 'any action.'"); *Rhodes*, 336 P.3d at 965–66 ("Rhodes' reading of the FDIC extender statute appears to overlook that the statute's phrase 'statute of limitations' expressly identifies the time limitation set by the FDIC extender statute itself; the phrase does not refer to the time limitations in other state statutes that the FDIC extender statute displaces."). The statute does not address the preexisting limitations periods being displaced because they are irrelevant. Per the plain meaning of the statute, if a preexisting limitations period would bar suits less than three years from the date of the FDIC's appointment as receiver, then that state (or federal) limitations period would conflict with the mandatory periods prescribed in the extender statute. The use of the term "statute of limitations" in the FDIC Extender Statute to describe the new limitations period being created contrasts sharply with the usage of the term in the CERCLA provision at issue in *CTS*. *See CTS*, 134 S.Ct. at 2185 ("The statute defines the 'applicable limitations period,' the 'commencement date' of which is subject to pre-emption, as a period specified in 'a statute of limitations.' [12 U.S.C.] § 9658(b)(2)."); *see also Burlington N. & Santa Fe Ry. Co. v. Poole Chem. Co.*, 419 F.3d 355, 362 (5th Cir.2005) ("Here, the reach of the plain language of § 9658 does not extend to statutes of repose.... Literally, § 9658 states that it only preempts state law when the applicable state *statute of limitations* 'provides a commencement date which is earlier than the [federally required commencement date]'—no mention of peremptory statutes or statutes of repose." (quoting 42 U.S.C. § 9658(a)(1)). All of § 9658's uses of the term "statute of limitations" describe the state statutes *being preempted*. *See* 42 U.S.C. § 9658(a) ("*State statutes of limitations* for hazardous substance cases" (emphasis added)); *id.* § 9658(a)(1) ("[I]f *the applicable limi-*

*tations period for such action (as specified in the State statute of limitations or under common law)* provides a commencement date which is earlier than the federally required commencement date...." (emphasis added)); *id.* § 9658(a)(2) ("Except as provided in paragraph (1), *the statute of limitations established under State law* shall apply in all actions brought under State law for personal injury...." (emphasis added)); *id.* § 9658(b)(3) ("The term 'commencement date' means the date specified in a *statute of limitations* as the beginning of the applicable limitations period." (emphasis added))). In contrast, the FDIC Extender Statute never describes the limitations periods being preempted at all, much less using the term "statute of limitations." In fact, the only two references to state law in the FDIC Extender Statute refer to "the period applicable under State law" and do not use the term "statute of limitations." 12 U.S.C. § 1821(d)(14)(A)(i)(II), (ii)(II). That Congress used the term "statute of limitations" immediately above to describe the new, federal limitations period, but used the broader term "the period applicable under State law" to describe state limitations periods, suggests, if anything, that Congress meant to pull all state limitations periods into the statute's ambit, regardless of whether they are characterized as statutes of limitations or statutes of repose. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 170 (2012) ("A word or phrase is presumed to bear the same meaning throughout a text; a material variation in terms suggests a variation in meaning.").

To the extent the use of the term "statute of limitations" is relevant, Congress's equivocation has rendered its use of the term of little probative value, at least by itself. The Court in *CTS* acknowledged that "[w]hile the term 'statute of limita-

tions' has acquired a precise meaning, distinct from 'statute of repose,' and while that is its primary meaning, it must be acknowledged that the term 'statute of limitations' is sometimes used in a less formal way," i.e., to "refer to any provision restricting the time in which a plaintiff must bring suit." *CTS*, 134 S.Ct. at 2185. The Court also acknowledged that "Congress has used the term 'statute of limitations' when enacting statutes of repose." *Id.*[10] In fact, the term "statute of repose" does not appear anywhere in the United States Code. The Court in *CTS* also noted that the Fifth Edition of *Black's Law Dictionary,* current at the time of the enactment of both § 9658 and the FDIC Extender Statute, equated statutes of limitations and statutes of repose in its definition of statutes of limitations: "Statutes of limitations are statutes of repose." *Id.* at 2186 (quoting *Black's Law Dictionary* 835 (5th ed.1979)). The Court then stated that "general usage of the legal terms has not always been precise, but the concept that statutes of repose and statutes of limitations are distinct was well enough established to be reflected in the 1982 Study Group Report," focusing the rest of its analysis of the use of the term on that piece of evidence from the legislative history. *Id.* The Supreme Court found the Study Group Report's differentiation between statutes of limitations and statutes of repose persuasive, as "when Congress did not make the same distinction, it is proper to conclude that Congress did not exercise the full scope of its pre-emption power." *Id.*

In contrast to the situation in *CTS*, the Appellees have pointed to nothing in the

FDIC Extender Statute's legislative history mentioning that distinction. Given that there is no such differentiation in the legislative history here—combined with the fact that the extender statute describes what it creates and not what it displaces—the use of the term "statute of limitations" is minimally "instructive." *Id.* at 2185. The Appellees argue—and the district court reasoned—that if Congress was aware of the distinction in 1986 (when § 9658 was passed), it was aware of the distinction in 1989 (when the extender statute was passed). That deduction, while potentially valid, is unpersuasive. First, it should go without saying that an admonition about the distinction between statutes of limitations and statutes of repose in the immediate context of the specific bill at issue is much stronger evidence of Congressional intent and awareness than is an admonition to a different Congress, three years earlier, in the context of a different bill. Second, the fact that Congress was aware of the narrow meaning of the term "statute of limitations," as well as the broad meaning, tells us nothing about which of those two meanings it intended when it used the term in the FDIC Extender Statute. It is perfectly acceptable, albeit imprecise, to use the term statute of limitations to encompass statutes of repose. *See id.* ("While the term 'statute of limitations' has acquired a precise meaning, distinct from 'statute of repose,' and while that is its primary meaning, it must be acknowledged that the term 'statute of limitations' is sometimes used in a less formal way."); *see also Nomura II,* 764 F.3d at 1210 ("[T]he Court recognized that 'the term "statute of limitations" is some-

---

10. The Court cited, as examples, 15 U.S.C. § 78u–6(h)(1)(B)(iii)(I)(aa) and 42 U.S.C. § 2278. The court in *Nomura II* cited additional examples of Congress's usage of the term "limitations" in creating statutes of "repose." *Nomura II,* 764 F.3d at 1234 n. 19

(citing 28 U.S.C. § 1658; 15 U.S.C. § 1681p). Both of the periods cited in *Nomura II* were, however, entitled "time limitations" and "limitation of actions," respectively, not "statute of limitations."

times used in a less formal way' and 'can refer to any provision restricting the time in which a plaintiff must bring suit.' The Court further acknowledged that 'Congress has used the term "statute of limitations" when enacting statutes of repose.' " (citation omitted) (quoting *CTS,* 134 S.Ct. at 2185)); *UBS,* 712 F.3d at 142–43 ("Although statutes of limitations and statutes of repose are distinct in theory, the courts—including the Supreme Court and this Court—have long used the term 'statute of limitations' to refer to statutes of repose, including specifically with respect to § 13 of the Securities Act."); *Rhodes,* 336 P.3d at 965 ("The distinction between these two terms is often overlooked."). In this sense, it is much like the term "res judicata," which can refer to preclusion law generally or claim preclusion—as distinct from issue preclusion—specifically. *See* 18 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 4402 (2d ed.2015). Additionally, the evidence, both before and since the FDIC Extender Statute's enactment, shows that even if Congress understands the conceptual distinction, the term "statute of repose" has not entered Congress's formal lexicon. Rather, the evidence indicates that, if and when Congress creates "statutes of repose," it refers to them as statutes of limitations. Ironically, that legislative imprecision is underscored here by the fact that the very statute of "repose" on which the Appellees rely is itself entitled a "Statute of Limitations." Tex. Rev. Civ. Stat. Ann. art. 581–33(H).

◼ Further, given that the extender statute uses the term "statute of limitations" to describe what it creates—and not what it preempts—the Appellees' argument relies, at least to some extent, on an unstated assumption: that if Congress creates a statute of limitations it intends only to displace other limitations periods char-

acterized as statutes of limitations, but not those characterized as statutes of repose. That assumption may have some validity when Congress creates a statute of limitations to serve the quotidian purposes of such statutes, namely, to "promote justice by preventing surprises through [plaintiffs'] revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *CTS,* 134 S.Ct. at 2183 (quoting *R.R. Telegraphers,* 321 U.S. at 348–49, 64 S.Ct. 582). Such purposes are, in the usual case, consistent with the coexistence of statutes of repose, which serve the complementary, albeit distinct, purpose of "effect[ing] a legislative judgment that a defendant should 'be free from liability after the legislatively determined period of time.' " *Id.* (quoting 54 C.J.S. *Limitations of Actions* § 7). But this is not the usual case. The FDIC Extender Statute did not create a new statute of limitations merely for the ordinary reasons, but also "to give the [FDIC] three years from the date upon which it is appointed receiver to.... investigate and determine what causes of action it should bring on behalf of a failed institution." *Barton,* 96 F.3d at 133. In addition to a minimum amount of time to bring claims, the extender statute is also meant to give the FDIC certainty as to what that amount of time is. Unlike the ordinary purposes of statutes of limitations, therefore, each of those specific, additional purposes underlying the extender statute is inconsistent with the coexistence of statutes of repose, at least to the extent that they would give the FDIC less than three years from the date of receivership to bring claims. The Appellees' assumption is, therefore, mistaken, and the fact that Congress used the term "statute of limitations" to describe what the extender statute creates says nothing about what it displaces.

Next, the Appellees cite the Supreme Court's reasoning in *CTS* that Congress's description of "the covered period in the singular" is suggestive, as such usage "would be an awkward way to mandate the pre-emption of two different time periods with two different purposes." 134 S.Ct. at 2186–87; *see also Fed. Deposit Ins. Corp. v. Bear Stearns Asset Backed Secs. I LLC,* No. 12CV40000–LTS–MHD, 2015 WL 1311300, at *5 (S.D.N.Y. Mar. 24, 2015) ("Like the CERCLA extender statute, the FDIC's Extender Provision refers only to 'statute of limitations' in the singular, several times, and includes no reference to any statute of repose."); *Fed. Deposit Ins. Corp. v. Chase Mortg. Fin. Corp.,* 42 F.Supp.3d 574, 578 (S.D.N.Y.2014) ("Like CERCLA, the FDIC Extender Statute describes the covered time period in the singular...."). While the FDIC Extender Statute does use the singular, it does not do so to describe the period being preempted. *See* 12 U.S.C. § 1821(d)(14)(A) ("[T]he applicable statute of limitations ... shall be...."); *id.* § 1821(d)(14)(A)(i)(II), (ii)(II) ("[T]he period applicable under State law."). Rather, the singular is used to describe the new, federal statute of limitations and the state law period that it conditionally borrows. *See* 12 U.S.C. § 1821(d)(14)(A), (A)(i)(II), (A)(ii)(II); *Nomura II,* 764 F.3d at 1212. Further, as the Court in *CTS* noted, the Dictionary Act states that "unless the context indicates otherwise—words importing the singular include and apply to several persons, parties, or things." 1 U.S.C. § 1; *CTS,* 134 S.Ct. at 2187; *see also* Scalia & Garner, *supra,* at 129 ("In the absence of a contrary indication, the masculine includes the feminine (and vice versa) and the singular includes the plural (and vice versa)."); *id.* at 130 ("The rule is simply a matter of common sense and everyday linguistic experience: 'It is a misdemeanor for any person to set off a rocket within the city limits without a written license from the fire marshal' does not exempt from penalty someone who sets off two rockets or a string of 100."). The Court in *CTS* found that definition inapplicable, as "the context [of § 9658] shows an evident intent not to cover statutes of repose." *CTS,* 134 S.Ct. at 2187. But here the context of the statute shows a contrary intent, an intent consistent with the Dictionary Act's default rule that the singular includes the plural. The FDIC Extender Statute employs the "period applicable under State law" only if it provides more than three years to the FDIC to investigate potential claims. *See* 12 U.S.C. § 1821(d)(14)(A)(i)(II), (ii)(II). That is the only qualification for state law to apply. The statute is, therefore, ambivalent toward the number of state statutes in play. Whether there is one state statute or whether there are fifty, the statute only "cares" that state law would provide more time to bring a claim than three years from the date of the FDIC's appointment as receiver.

Further, the Appellees' argument assumes that, in a state with both a statute of limitations and a statute of repose, there are necessarily two limitations periods—there are not. At least not as a practical matter. Certainly, one could understand there to be a "period of repose" and a "limitations period." On the other hand, if the state statute of limitations runs prior to the statute of repose, the limitations period has run and the claim is barred. There is not some "second" limitations period for the claim. And if the statute of limitations would be tolled beyond the repose period, but the repose period acts to bar the claim, again there is no "second" limitations period. The claim is barred. Therefore, if one reads "the period applicable under State law" in the extender statute as meaning the period after which

state limitations law would bar the claim—full stop—then there is nothing "awkward" about the extender statute's use of the singular. That use of the singular presents a very different case from § 9658's usage. *See, e.g.,* 42 U.S.C. § 9658(b)(2) ("The term 'applicable limitations period' means the period specified in a statute of limitations during which a civil action referred to in subsection (a)(1) of this section may be brought."). For while, in the example given, there is certainly more than one "statute of limitations," there is not necessarily more than one "period applicable under State law."

Additionally, the Supreme Court's reasoning in *CTS*—that § 9658's definition of the "applicable limitations period" as " 'the period' during which a 'civil action' under state law 'may be brought' " presupposed the existence of a covered civil action—is inapposite here. *CTS,* 134 S.Ct. at 2187 (quoting 42 U.S.C. § 9658(b)(2)). The Court reasoned that as statutes of repose can prevent a "civil action" from ever coming into existence, that terminology in the statute suggested Congress's intent not to preempt statutes of repose. *Id.* The FDIC Extender Statute, however, contains no such formulation. Rather, the extender statute prescribes "the applicable statute of limitations with regard to *any action* brought by the Corporation as conservator or receiver." 12 U.S.C. § 1821(d)(14) (emphasis added); *see also Nomura II,* 764 F.3d at 1213 ("Here, unlike § 9658, the Extender Statute does not use the term 'civil action'; it refers more broadly to 'any action.' "). It does not presuppose anything other than that the FDIC-as-receiver has brought an action. And again, § 9658 presupposed that a cause of action existed in defining the state limitations period *being preempted.* The FDIC Extender Statute, in contrast, uses the phrase "any action" to describe when the *new limitations period* it creates applies. *See* 12 U.S.C. § 1821(d)(14)(A).

The Appellees also argue that, like § 9658, the FDIC Extender Statute invokes the concept of accrual, a concept associated with statutes of limitations, but not statutes of repose. *See Chase,* 42 F.Supp.3d at 578 ("Furthermore, the FDIC Extender Statute addresses (and changes) the dates of accrual of claims.... In contrast, the 1933 Act's statute of repose has nothing to do with when a claim accrues."); *see also Bear Stearns,* 2015 WL 1311300, at *5. The FDIC Extender Statute certainly uses the term accrual. But "accrual" is used as part of the new, federal limitations period the extender statute prescribes; it does not describe what it replaces. *See generally* 12 U.S.C. § 1821(d)(14); *see also Nomura II,* 764 F.3d at 1229 ("Defendants argue that the Extender Statute's reference to accrual means that it may only apply if the time limit being displaced is also subject to accrual—that is, when the displaced time limit falls within the narrow meaning of 'statute of limitations.' But this argument confuses what the Extender Statute *does*—sets an all-purpose time frame for NCUA to bring enforcement actions on behalf of failed credit unions—with what it *replaces*—the preexisting time frames to bring 'any action.' "). Moreover, the statute ties the concept of accrual only to the new federal three-year period created by the statute; accrual is not referenced at all in the statute's provisions borrowing "the period applicable under State law." *Compare* 12 U.S.C. § 1821(d)(14)(A)(ii)(I) ("the 3–year period *beginning on the date the claim accrues*" (emphasis added)), *with id.* § 1821(d)(14)(A)(ii)(II) ("the period applicable under State law"). Additionally, § 1821(d)(14)(B)'s description of when a claim accrues for purposes of the extender statute is definitional, and therefore also does not apply at all to "the period applica-

ble under State law." *See* 12 U.S.C. § 1821(d)(14)(A)(i)(I) ("the 6–year period beginning on the date the claim accrues"); *id.* § 1821(d)(14)(A)(ii)(I) ("the 3–year period beginning on the date the claim accrues"); *id.* § 1821(d)(14)(B) ("Determination of the date on which a claim accrues"). Thus, the statute's only references to state limitations law, "the period applicable under State law," do not incorporate or presuppose the concept of accrual in any way.[11] Given the fact that the statute's use of the term accrual describes what the statute creates, not what it displaces, and is tied only to the new, federal three-year period, and conspicuously not to the statute's incorporation of "the period applicable under State law," the reference to accrual does not indicate that preemption is limited only to statutes of limitations but not statutes of repose.

But even if the words of the FDIC Extender Statute are considered ambiguous, the statute's structure demonstrates Congress's clear intent to preempt state statutes of repose. *See Altria Grp., Inc. v. Good,* 555 U.S. 70, 76, 129 S.Ct. 538, 172 L.Ed.2d 398 (2008) ("Congress may indicate pre-emptive intent through a statute's express language or through its structure and purpose."); *see also Teltech Sys., Inc. v. Bryant,* 702 F.3d 232, 236 (5th Cir.2012) (quoting same). The statute begins by setting out its new, exclusive federal limitations period. 12 U.S.C. § 1821(d)(14)(A). By doing so, the statute mandates the application of federal law as the default limitations period. Under this structure, state law is the exception, not the rule. "[T]he period applicable under State law" does not apply unless it fits the precise terms of the statute, namely that it extend

more than three years from the date of the FDIC's appointment as receiver. *See* 12 U.S.C. § 1821(d)(14)(A)(i), (ii). If a "period applicable under State law" does not meet that condition, then it cannot apply under the statute's structure, regardless of its characterization as a statute of limitations or a statute of repose.

Indeed, in its analysis of § 9658 in *CTS,* the Supreme Court found it instructive that § 9658 characterized "pre-emption as an '[e]xception' to the regular rule" in the statute that "the statute of limitations established under State law shall apply." *CTS,* 134 S.Ct. at 2185 (alteration in original) (quoting 42 U.S.C. § 9658(a)(1), (2)). The Court stated that "[u]nder this structure, state law is not pre-empted unless it fits into the precise terms of the exception." *Id.* Conversely, the FDIC Extender Statute sets out a new federal rule that functions as the default, with application of state law as the exception. *See* 12 U.S.C. § 1821(d)(14)(A)(ii) ("[T]he applicable statute of limitations ... shall be ... the longer of—(I) the 3–year period beginning on the date the claim accrues; or (II) the period applicable under State law."); *see also Nomura II,* 764 F.3d at 1208–09 ("Unlike § 9658's federal commencement date, the limitations framework provided in the Extender Statute does not establish a narrow ' "exception" to the regular rule.' Instead, it creates the exclusive time framework for all NCUA enforcement actions and replaces all other time periods. Accordingly, unlike the applicable state limitations periods modified by § 9658's federal commencement date, the time limits displaced by the Extender Statute need not 'fit[ ] into [its] precise terms ....' "

---

11. Indeed, a contrary reading, incorporating the statute's definition of accrual into the state-law period borrowed would also need to incorporate the extender statute's definition of accrual in § 1821(d)(14)(B). Such a reading would have the bizarre effect of stitching the state law limitations period together with the statutory accrual date, i.e., the date of the FDIC's appointment as receiver. That reading has no support in the text.

(alterations in original) (citation omitted) (quoting *CTS*, 134 S.Ct. at 2185)). Given this structure, per the Supreme Court's analysis in *CTS*, it is *state* law that must "fit[ ] into the precise terms of the exception" in order to apply. *CTS*, 134 S.Ct. at 2185. The terms of the exception in the statute are not that the "period applicable under State law" be a statute of limitations, rather than a statute of repose, but that it be longer than three years. If the state limitations period fails to meet that condition—regardless of its characterization—it cannot "fit[ ] into the precise terms of the exception" in the extender statute, and therefore cannot apply. *Id.*

The district court brushed aside that difference in the structure of the two statutes, reasoning that "Section 9658 alters state limitations periods only when the state limitations period commences from an earlier date.... Similarly, the FDIC Extender Statute alters state statutes of limitations only when they are shorter than the alternative federal limitations period; if the state statute is more generous, its terms continue to apply." *See also* Appellees' Br. 31 ("The FDIC also contends that the federal accrual date created by the FDIC Extender Statute applies only if it is later than the state-law accrual date, but again, this is no distinction at all: the federal statute of limitations and accrual rules in both the FDIC Extender Statute and its CERCLA analogue apply only when they yield later dates than would apply under state law."). This reasoning is fundamentally flawed for two reasons. First, the district court's assumption that a difference in structure only is probative to statutory interpretation if it entails a difference in function is circular. In any statute that contains an exception, it will always be the case that "the default rule applies except when it doesn't." But which rule stands as the default rule and which stands as the exception provides insight into Congress's preemptive intent. *See Altria*, 555 U.S. at 76, 129 S.Ct. 538 ("Congress may indicate pre-emptive intent through a statute's ... structure...."). In § 9658, Congress provided that application of state law was the default, indicating a narrow preemptive intent. *See* 42 U.S.C. § 9658(a)(2); *CTS*, 134 S.Ct. at 2185 ("Turning to the statutory text, the Court notes first that § 9658, in the caption of subsection (a), characterizes pre-emption as an '[e]xception' to the regular rule.... Under this structure, state law is not pre-empted unless it fits into the precise terms of the exception." (alteration in original)). In contrast, the FDIC Extender Statute sets application of the federal period as the default rule, indicating a broader preemptive intent. *See* 12 U.S.C. § 1821(d)(14)(A).[12]  Second, by

---

**12.** In fact, that difference in structure was highlighted to the Supreme Court by the United States' brief as amicus curiae in *CTS* as supporting the narrow construction of § 9658 that the Court ultimately adopted:

> Given these textual manifestations of Congress's limited intent, Section 9658 contrasts markedly with other statutes in which Congress chose to override *all* otherwise applicable time limitations.
>
> In one set of such statutes, Congress created a new, exclusive time limitation applicable to claims brought by specified federal agencies as conservator, receiver, or liquidating agent for failed financial institutions.

Courts of appeals have correctly construed such limitations periods to apply to the exclusion of any other time limitation that might otherwise apply. *See National Credit Union Admin. Bd. v. Nomura Home Equity Loan, Inc.*, 727 F.3d 1246, 1254–1267 (10th Cir.2013) (construing 12 U.S.C. 1787(b)(14)), petition for cert. pending, No. 13–576 (filed Nov. 8, 2013); *Federal Hous. Fin. Agency v. UBS Ams. Inc.*, 712 F.3d 136, 141–144 (2d Cir.) (construing 12 U.S.C. 4617(b)(12)), motion for leave to intervene and file a pet. for writ of cert. denied, —— U.S. ——, 134 S.Ct. 372, 187 L.Ed.2d 13 (2013); *see also Beckley Capital Ltd. P'ship*

looking at the statutes at too high a level of abstraction, the district court was also incorrect as to the way the two statutes' exceptions function. It is simply not the case that "Section 9658 alters state limitations periods only when the state limitations period commences from an earlier date." Section 9658 contains another precondition to the application of the federal rule that was fundamental to the Supreme Court's decision in *CTS*. Under § 9658, the federal rule preempts the state rule "if the applicable limitations period for such action," defined as "the period specified in a statute of limitations," "provides a commencement date which is earlier than the federally required commencement date." 42 U.S.C. § 9658(a)(1), (b)(2). Section 9658, therefore, sets *two* preconditions for the application of federal law: (1) the state law must be *specified in a statute of limitations* and (2) it must commence earlier than the federally required commencement date. But the FDIC Extender Statute's plain language provides for only *one* precondition, that "the period applicable under State law" be longer than three years from the date of the FDIC's appointment as receiver. The district court's reasoning is therefore incorrect as a matter of statutory interpretation generally and as applied to this case.

Moreover, the Supreme Court in *CTS* found "[a]nother and altogether unambiguous textual indication that § 9658 does not pre-empt statutes of repose" in that " § 9658 provides for equitable tolling for 'minor or incompetent plaintiff[s].' " *CTS*, 134 S.Ct. at 2187 (alteration in original) (quoting 42 U.S.C. § 9658(b)(4)(B)). That "unambiguous textual indication" is wholly absent from the FDIC Extender Statute, which includes no such tolling provisions. *See generally* 12 U.S.C. § 1821(d)(14).

## V.*

To the extent the text and structure of the FDIC Extender Statute leave any doubt that it is intended to displace both statutes of limitations and statutes of repose, it is dispelled by the statute's purpose. The 2008 financial crisis caused an explosion in the number of bank failures that the FDIC was called on to resolve. Twenty-five banks failed from 2001 through 2007; five-hundred and thirteen failed from 2008 to 2015. Failed Bank List, FDIC, https://www.fdic.gov/bank/individual/failed/banklist.html (last visited July 17, 2015). During the Savings and Loan Crisis, in response to which FIRREA was passed, the numbers were similarly staggering: "During the period from 1980 to 1988, over 500 savings associations failed—more than three-and-a-half times as many as in the previous forty-five years

---

*v. DiGeronimo*, 184 F.3d 52, 57 (1st Cir. 1999) (construing 12 U.S.C. 1821(d)(14)). The text, context, and history of those provisions make clear that Congress intended an exclusive, uniform time limitation to apply to actions brought by the designated federal agencies. *E.g., UBS Ams.*, 712 F.3d at 141 (noting that 12 U.S.C. 4617(b)(12) "sets forth *'the* applicable statute of limitations with regard to *any* action brought by [FHFA] as conservator or receiver' ") (quoting 12 U.S.C. 4617(b)(12)(A) (emphasis and alteration in original)).

Here, by contrast, Congress did not enact a new time limitation to supersede all others. Instead, Congress altered particular preexisting state statutes of limitations in only one limited respect—by changing the date on which the cause of action accrued. Congress otherwise left time limitations unchanged, explicitly stating that those time limitations continue to apply "[e]xcept" to the extent that they are specifically superseded by federal law. 42 U.S.C. 9658(a)(2). Brief for the United States as Amicus Curiae Supporting Petitioner at 22–23, *CTS Corp. v. Waldburger*, 134 S.Ct. 2175 (2014) (No. 13–339), 2014 WL 828057, at *22–*23.

* Judge Elrod does not concur in this Part V.

combined." Clark et al., *supra*, at 1013. This proverbial "page of history" brings the import of Congress's purpose in passing the FDIC Extender Statute into sharp relief. *See N.Y. Trust Co. v. Eisner*, 256 U.S. 345, 349, 41 S.Ct. 506, 65 L.Ed. 963 (1921). "The purpose of FIRREA's preemption of state statutes of limitations is to give the [FDIC] three years from the date upon which it is appointed receiver to.... investigate and determine what causes of action it should bring on behalf of a failed institution." *Barton*, 96 F.3d at 133; *UBS*, 712 F.3d at 142 ("Congress obviously realized that it would take time for this new agency to mobilize and to consider whether it wished to bring any claims and, if so, where and how to do so. Congress enacted [the FHFA Extender Statute] to give FHFA the time to investigate and develop potential claims on behalf of [Fannie Mae & Freddie Mac]—and thus it provided for a period of at least three years from the commencement of a conservatorship to bring suit."). Application of statutes of repose would frustrate that purpose to an extent equal to—and possibly greater than—the application of statutes of limitations. It is difficult to conceive that Congress, in enacting the extender statute, reasoned that the FDIC required at least three years to investigate and pursue claims and determined that, while statutes of limitations posed too great an obstacle to that objective to stand, statutes of repose did not. *See Nomura II*, 764 F.3d at 1217 ("When Congress enacted the Extender Statute, it not only gave the NCUA the time it needs to do its work, it also relieved the NCUA from the burden of complying with multiple federal and state statutes of limitations by giving it a statute of limitations of its own. It strains common sense to think Congress would have saddled the NCUA with having to comply with multiple federal and state statutes of repose."); *UBS*,

712 F.3d at 142. It is highly unlikely that Congress would have preempted a statute of limitations that would cut off a potential claim the day after the FDIC's appointment as receiver, but be perfectly content *with that same result* so long as it was caused by a statute characterized as a statute of "repose." It seems even less likely given that the Appellees have failed to cite so much as a whisper in the legislative history indicating such an intent. To the contrary, one of FIRREA's sponsors stated on the record that "[t]he provisions should be construed to maximize potential recoveries by the Federal Government by preserving to the greatest extent permissible by law claims that would otherwise have been lost due to the expiration of hitherto applicable limitations periods." 135 Cong. Rec. 18866 (Aug. 4, 1989) (statement of Senator Riegle). Therefore, to the extent the legislative history is probative, it suggests that the FDIC Extender Statute should be read broadly. *Nomura II*, 764 F.3d at 1217 ("FIRREA's statutory purpose (as explained by its sponsor, the Supreme Court, and in the statute itself), though generally stated, demonstrates Congress meant any ambiguity in the term 'statute of limitations' to be construed broadly."). And the extender statute provides the FDIC with more than just time—it provides certainty. Certainty that allows the FDIC—taxed to the limit in the midst of a financial crisis—to focus its efforts on resolving failed banks and investigating potential claims rather than combing state statute books for potentially applicable limitations periods and speculating about, for example, whether a certain tolling provision might apply, or whether a given limitations period would be characterized by a court as a statute of limitations or a statute of repose. *See Nomura II*, 764 F.3d at 1217. That certainty would be wholly upset absent preemption of all limitations periods.

But the Appellees contend that this purpose and legislative history are insufficient, pointing to the fact that the Supreme Court in *CTS* eschewed the plaintiff's arguments regarding the legislative history of § 9658 and citing the Court's statement that "no legislation pursues its purposes at all costs." *CTS*, 134 S.Ct. at 2185 (internal quotation marks omitted); *see also id.* at 2188. The two cases could not be more different. The proffered legislative purpose in *CTS* was general, "to help plaintiffs bring tort actions for harm caused by toxic contaminants." *Id.* at 2188. The purported purpose of the FDIC Extender Statute—to give the FDIC at least three years to investigate and evaluate potential claims—is specific and tied to the statute's structure and function. *See id.* ("But the level of generality at which the statute's purpose is framed affects the judgment whether a specific reading will further or hinder that purpose."). More fundamentally, the Supreme Court in *CTS* was faced with two competing constructions: one that would serve the statute's general purpose, by extending the characteristically short statutes of limitations for personal injury and property damage torts but not the characteristically longer statutes of repose, and another that would serve that purpose to a greater extent. *See id.* at 2181, 2182 (describing North Carolina's three-year statute of limitations and ten-year statute of repose). In contrast, one of the two constructions here would fit Congress's (much more specific) purpose exactly; the other would have Congress playing at roulette. One would guarantee the FDIC at least three years from its appointment as receiver to investigate and bring claims; the other would sometimes grant the FDIC that period, but often not, depending on whether a limitations period, even if titled a "statute of limitations," were characterized as a statute of "repose." The purpose of the extender statute is, therefore, a proper consideration here and reinforces the plain meaning of the text—the extender statute displaces statutes of repose.[13]

The text and structure of the FDIC Extender Statute provide for preemption of all limitations periods—no matter their characterization as statutes of limitations

---

**13.** Further, the Appellees' argument that *O'Melveny & Myers* precludes reliance on "FIRREA's cost-recovery objective" in order to support preemption fails. Appellees' Br. 37 (internal quotation marks omitted). In *O'Melveny & Myers v. F.D.I.C.*, the FDIC urged the Supreme Court to craft a new, federal, common-law rule for the imputation of liability. 512 U.S. 79, 83, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994). The Court stated:

The closest respondent comes to identifying a specific, concrete federal policy or interest that is compromised by California law is its contention that state rules regarding the imputation of knowledge might "deplet[e] the deposit insurance fund," Brief for Respondent 32. But neither FIRREA nor the prior law sets forth any anticipated level for the fund, so what respondent must mean by "depletion" is simply the forgoing of *any* money which, under any *conceivable* legal rules, might accrue to the fund. That

is a broad principle indeed, which would support not just elimination of the defense at issue here, but judicial creation of new, "federal-common-law" causes of action to enrich the fund. Of course we have no authority to do that, because there is no federal policy that the fund should always win. Our cases have previously rejected "more money" arguments remarkably similar to the one made here.

*Id.* at 88, 114 S.Ct. 2048. The statutory purpose of the FDIC Extender Statute is altogether different. The purpose of providing the FDIC at least three years to investigate claims is specific and tied to the structure and function of the statute. Additionally, the statement from Senator Riegle is not a broad pronouncement about the purpose of FIRREA as a whole, but is a specific statement from the bill's sponsor stating that the specific provision at issue in this case is meant to be construed broadly.

or statutes of repose—to the extent that they provide less than three years from the date of the FDIC's appointment as receiver to bring claims.[14] That is also the only interpretation consistent with the statute's purpose of providing the FDIC with a minimum period of time to investigate and evaluate potential claims on behalf of a failed bank. The contrary interpretation would thwart the purpose of Congress by truncating the FDIC's statutory three-year minimum period and leaving tenebrous the applicable limitations period where Congress meant to elucidate it.

## VI.

The judgment of the district court is therefore REVERSED, and the case is REMANDED.

---

14. We therefore need not reach the applicability of the presumption against preemption or the FDIC's argument that statutes of limitations should be construed narrowly in favor of the federal government.